**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| Kevin W. Klump, | ) | |
| | ) | C.A. No. 6:09-cv-03214-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Bausch and Lomb, Incorporated, Arthur | ) | |
| Driscoll, and Cheryl A. Snyder, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ ) | | |

     This matter is before the court pursuant to Plaintiff Kevin W. Klump's Motion to Remand [Entry # 15] under 28 U.S.C. § 1447. As set forth in detail below, Defendants' removal of this action was improper because there is not complete diversity of citizenship between Plaintiff and all Defendants. Plaintiff is a South Carolina citizen, as are the individual Defendants, Arthur Driscoll and Cheryl Snyder. Accordingly, this court must remand this action to the Court of Common Pleas for the Thirteenth Judicial Circuit in Greenville County for lack of subject matter jurisdiction under 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

     This action arises out of the termination of Plaintiff's employment with Defendant Bausch & Lomb, Incorporated ("Bausch & Lomb") on or about October 16, 2006, as well as criminal charges Defendants brought against Plaintiff after his termination. In his Complaint, Plaintiff alleges causes of action for malicious prosecution, intentional infliction of emotional distress, and wrongful

termination in violation of public policy.[1] Specifically, Plaintiff alleges that Bausch & Lomb terminated him shortly after he questioned a request from his supervisor, Defendant Arthur Driscoll ("Driscoll"), to surrender all of his documentation (all copies and originals) relating to a defective contact lens solution, known as ReNu® with MoistureLoc®, which Bausch & Lomb produced at its plant in Greenville, South Carolina. MoistureLoc® had been the subject of several Food and Drug Administration ("FDA") investigations, numerous consumer complaints, and multiple products liability lawsuits. Plaintiff further alleges that, after his termination, Defendants fabricated criminal charges against him for the improper purpose of discrediting him and intimidating him in an effort to prevent him from cooperating with the FDA and the product liability plaintiffs. Driscoll was Plaintiff's immediate supervisor, and Defendant Cheryl A. Snyder[2] ("Snyder") was the human resources director for Bausch & Lomb at the time they allegedly committed the torts. Plaintiff alleges that both Driscoll and Snyder were heavily involved in the purported investigation leading to Plaintiff's arrest and indictment.

On October 15, 2009, Plaintiff filed this action in the Court of Common Pleas for the Thirteenth Judicial Circuit in Greenville County. On November 14 and 16, 2009, respectively, Plaintiff served the individual Defendants and Bausch & Lomb's registered agent with a Summons and Complaint. On December 15, 2009, Defendants removed the action to the United States District Court, asserting that the individual Defendants are sham defendants who were fraudulently joined by Plaintiff for the sole purpose of defeating this court's diversity jurisdiction.

---

[1]Plaintiff directs the first two causes of action against all Defendants and the third cause of action against Defendant Bausch & Lomb.

[2]Snyder is no longer employed by Bausch & Lomb.

## LEGAL STANDARD

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). It is axiomatic that a case may only be removed from state court to a federal district court if the district court would have had original jurisdiction in the first place. *See*, *e.g.*, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005) (citing 28 U.S.C. § 1141); *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). A district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332. This Section requires complete diversity between all parties. *Strawbridge v. Curtiss*, 3 Cranch 267 (1806). Furthermore, in cases in which the district court's jurisdiction is based on diversity of citizenship, the privilege of removal is further limited in that a federal court may exercise jurisdiction only if no defendant is a citizen of the state where the action has been initiated. *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996).

The standards governing removal and remand are well established in the Fourth Circuit. Defendant, as the party seeking to invoke federal subject matter jurisdiction by removal, bears the burden of establishing that the Court's jurisdiction is proper. *Mulchahey  v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). However, "[i]f at any time before final judgment it

appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removal statute must be strictly construed, and if there is any doubt raised about the propriety of federal jurisdiction, a court should settle the jurisdictional question in favor of state jurisdiction and remand the case to state court. *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100 (1941); *Mulchahey*, 29 F.3d at 151.

## DISCUSSION

### A. Diversity Jurisdiction

Defendants' removal of this case is based on diversity jurisdiction, assuming the fraudulent joinder of the individual Defendants. Plaintiff does not dispute that the amount in controversy is greater than $75,000.00 irrespective of Bausch & Lomb's proposed counterclaims. Furthermore, Defendants have acknowledged that Plaintiff and both individual Defendants are citizens and residents of South Carolina, and the action was initiated in the Circuit Court of South Carolina. Therefore, unless the individual Defendants are dismissed as sham defendants, complete diversity of citizenship does not exist in this case, as required by *Strawbridge* and *Catepillar*.

### B. Fraudulent Joinder

The doctrine of fraudulent joinder permits this court to disregard the individual Defendants for purposes of determining the existence of diversity jurisdiction. *See*, *e.g.*, *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (articulating the standard under which fraudulent joinder must be established). To demonstrate fraudulent joinder, Defendants have the high burden of proving either "outright fraud in the plaintiff's pleading of jurisdictional fact" or otherwise demonstrate that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1993)

4

(quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original). The removing defendant "must show that the plaintiff cannot establish a claim [against the non-diverse defendants] even after resolving all issues of law and fact in the plaintiff's favor." *Id.* As the *Hartley* court noted, "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* In other words, a plaintiff seeking remand need only demonstrate a "glimmer of hope" or "only a slight possibility of a right to relief" against the alleged sham defendants to have the case sent back to state court. *Id.* at 426.

### 1. Fraud in the Pleadings

Because Defendants concede that they are not aware of outright fraud in the jurisdictional portion of Plaintiff's Complaint, and the court cannot decipher outright fraud upon its own review of the pleadings, the relevant inquiry is whether Plaintiff maintains a viable cause of action against the individual Defendants under South Carolina law for the intentional torts alleged against them.

### 2. Viability of State Law Claims

In conducting the analysis whether Plaintiff's claims against the individual Defendants are viable under state law, such claims are governed by South Carolina common law. *See Bettius v. Sanderson, P.C. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa.*, 839 F.2d 1009, 1019 (4th Cir. 1988) ("When hearing a case pursuant to diversity jurisdiction, a federal court must determine issues of state law as it believes the highest court in the state would determine them."). Furthermore, to determine the existence of a viable claim under South Carolina law, this court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs. v. Group W Tel., Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990). However, in disputes over whether removal was proper, the Fourth

Circuit has cautioned that "a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact . . . [C]ourts should minimize threshold litigation over jurisdiction." *Hartley*, 187 F.3d at 426. Rather, "[j]urisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464, n. 13 (1980) (internal quotation marks omitted)). In other words,

> Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

*Hartley*, 187 F.3d at 426.

The only inquiry at issue here is whether the allegations against the individual Defendants for malicious prosecution and intentional infliction of emotional distress raise a "slight possibility" or a "glimmer of hope" that Plaintiff's claims against them could succeed. Plaintiff alleges the intentional torts of malicious prosecution and intentional infliction of emotional distress against the individual Defendants. For the reasons stated herein, the court finds and concludes that Plaintiff's Complaint states a colorable claim under the jurisdictional inquiry.

### a. Intentional Infliction of Emotional Distress

Defendants contend that Plaintiff cannot meet his burden of proof to state a cause of action against his co-employees for intentional infliction of emotion distress because this cause of action is barred by the exclusivity provision of the South Carolina Workers' Compensation Act (the "Act"). Specifically, Bausch and Lomb claims that Plaintiff cannot prove that Driscoll and Snyder were the alter-egos of Bausch and Lomb under *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 428, 428

S.E.2d 700 (1993),  or acted with the "specific intent" to cause Plaintiff harm under *Peay  v. U.S. Silica*, 313 S.C. 91, 93-94, 437 S.E.2d 64, 65-66 (1993).

It is well established that the Act provides the exclusive remedy in suits by employees against their employers for injuries sustained by an employee arising out of and in the course and scope of employment. *See, e.g., Strickland v. Galloway*, 348 S.C. 644, 647, 560 S.E.2d 448, 449 (Ct. App. 2002) ("The exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act . . . the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee."). The Act provides in relevant part:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540 (2009). South Carolina courts have expressly held that the same immunity from civil suit provided to employers under the Act also extends to co-employees. *See Posey v. Proper Mold & Engineering, Inc.*, 378 S.C. 210, 661 S.E.2d 395 (Ct. App. 2008); *Edens v. Bellini,* 359 S.C. 433, 442, 597 S.E.2d 863, 868 (Ct. App. 2004); *Strickland*, 348 S.C. at 647, 560 S.E.2d at 449 ("The immunity is conferred not only on the direct employer, but also on co-employees.") (*citing* Burnet R. Maybank et al., *The Law of Workers' Compensation Insurance in South Carolina* XV-1 (2d ed.1998)).

However, in very limited circumstances, South Carolina law provides that an employee may sue an employer at common law for an intentional tort, because "[t]he intentional and outrageous nature of the act removes it from the realm of 'accidental' injury." *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890 (1991), overruled on other grounds, *Sabb v. South Carolina State University*, 350

S.C. 416, 567 S.E.2d 231 (2002). Thus far, this exception has been recognized in the context of assault and battery and intentional infliction of emotional distress committed by a dominant owner or "alter ego" of the employer. *Stewart v. McLellan's Stores Co.*, 194 S.C. 50, 9 S.E.2d 35 (1940) (assault and battery); *McSwain*, 304 S.C. at 28, 402 S.E.2d at 891 ("alter-ego" theory). Defendants maintain that because neither Driscoll nor Snyder were "alter-egos" of Bausch & Lomb, Plaintiff's allegations against them for intentional infliction of emotional distress are not viable under state law because they are subject to the Act's exclusivity provision. Defendants rely on *Dickert* for this proposition claiming that without an alter ego as the tortfeasor, an employee's action against a company for an intentional tort by a co-worker falls squarely within the scope of the Act. On the other hand, Plaintiff also relies on *Dickert* to suggest that the intentional tort exception may apply to co-employees. While it is true, as Defendants suggest, that the *Dickert* court refused to expand the definition of alter ego beyond "dominant corporate owners and officers" when dismissing the intentional tort claims against the employer based on the deliberate sexual misconduct of the plaintiff's co-worker, the court further noted that this immunity would not necessarily bar that plaintiff's direct claim against her co-worker. *Dickert*, 311 S.C. at 221, 428 S.E.2d at 701.

Furthermore, the South Carolina Supreme Court has held that the intentional tort exception is *only* satisfied where the employer acted with a "deliberate or specific intent" to injure the plaintiff. *See Peay*, 313 S.C. at 93- 94, 437 S.E.2d at 65-66 n.1. In *Peay*, the court expressly held that the very same standard for establishing an intentional tort claim against an employer under the Act likewise applies to such claims against a co-employee. 313 S.C. 91, 93-94, 437 S.E.2d 64, 65-66 n.1 ("The same standard also would apply to injuries intentionally inflicted by a co-employee.") (*citing Dickert v. Metro. Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700 (1993)).

8

Plaintiff claims the Driscoll and Snyder falsely accused him of a crime with the intent of "creating a pretextual reason for firing him" and "to intimidate him into not cooperating" with the FDA and various plaintiffs who were suing Bausch & Lomb under various product liability theories. (Compl., ¶ 35). Defendants strongly dispute the truth of these allegations. Reading *Dickert* and *Peay* together, one can only conclude that under South Carolina law, a co-employee, like the employer, *may* be subject to liability for an intentional tort so long as the plaintiff can establish the tortfeasor acted with the requisite specific intent to state such a claim outside of the Act. Therefore, at this juncture, the court need not further implicate the merits in its analysis of Plaintiff's allegations. *See Hartley*, 181 F.3d at 426 ("The district court erred by delving too far into the merits in deciding a jurisdictional question. The district court should not have made its own determination concerning the novel application of the public duty rule to [the plaintiff's] claims. It also incorrectly placed the burden on [the plaintiff] to show that her claims may succeed rather than requiring [defendant] to negate all possibility of recovery. The issues that the district court attempted to resolve are properly left to the state court for later stages of litigation."). In resolving all questions of fact and law in favor of Plaintiff, the court finds that Defendants have not met their burden to demonstrate that Driscoll and Snyder were fraudulently joined as to this cause of action. To the contrary, Plaintiff has presented law and facts to demonstrate that there is a chance he could prevail in state court.[3]

---

[3]The court also notes that the parties have undertaken very little discovery in this case; as a result, Plaintiff has not had the opportunity to fully develop his case against Defendants.

### b. Malicious Prosecution

Defendants further argue that Plaintiff's claim for malicious prosecution is deficient as to all Defendants because Plaintiff cannot establish that his criminal charges were dismissed under circumstances that are consistent with or suggestive of his innocence and Plaintiff cannot prove that the prosecutor lacked probable cause to commence the action against Plaintiff. Plaintiff concedes that the mere entry of a *nolle prosequi* is not enough to support a claim for malicious prosecution; however, Plaintiff has alleged that Driscoll and Snyder intentionally distorted and misrepresented the facts to the Greenville County Sheriff's Department to secure Plaintiff's arrest. Plaintiff further argues that the evidence developed during discovery will support his claims.

Because the court has determined that Plaintiff's case should be remanded as to Plaintiff's cause of action for intentional infliction of emotional distress, the court will also remand this cause of action to the state court. *See Hartley*, 187 F.3d at 425-26 ("We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [The plaintiff's] claims may not succeed ultimately, but ultimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.") (internal citations omitted)).

For the foregoing reasons, Plaintiff's claims against Driscoll and Snyder are viable, because Fourth Circuit precedent requires that Plaintiff receive the benefit of any doubt regarding the legal and factual issues in the case. Driscoll and Snyder are not sham defendants, nor were they fraudulently joined in this action for an improper purpose. As such, complete diversity does not exist among the parties in this case, and this court does not have subject matter jurisdiction under 28 U.S.C. § 1332.

## CONCLUSION

This action is **REMANDED** to the South Carolina Court of Common Pleas for the Thirteenth Judicial Circuit.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

September 24, 2010
Greenville, South Carolina